UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHRISTOPHER TYSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   20-1450 (RC) |
| | : | |
| v. | : | Re Document Nos.:   12, 13, 14, 18 |
| | : | |
| DISTRICT OF COLUMBIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

G<small>RANTING IN</small> P<small>ART AND</small> D<small>ENYING IN</small> P<small>ART</small> D<small>EFENDANTS'</small> M<small>OTION TO</small> D<small>ISMISS</small>

**I.  INTRODUCTION**

At the conclusion of Plaintiff Christopher Tyson's criminal sentence of incarceration, Judge Marisa Demeo of the D.C. Superior Court ordered that he receive a bed-to-bed transfer to the Reentry and Sanctions Center ("RSC") for inpatient treatment.  Under Judge Demeo's order, when the term of incarceration expired, the Court Services and Offender Supervision Agency ("CSOSA") would take over custody of Plaintiff from the D.C. Jail and place him in the rehabilitation center.  Plaintiff's term of incarceration expired on April 29, 2019.  He was not released from the D.C. Jail's custody and transferred to RSC until May 23, 2019.  Through this civil action, Plaintiff brings common law tort and constitutional claims against the Defendants for this alleged overdetention.  The District of Columbia, Lennard Johnson (the Warden of the D.C. Jail), and Jeanette Myrick (Lead Supervisory Legal Instruments Examiner in the Record Office) (together "Defendants") have moved to dismiss Plaintiff's Amended Complaint.  For the reasons stated below, the Court will grant the motion to dismiss Plaintiff's claims brought under 42 U.S.C. § 1983 for failure to state a claim, will grant the motion with respect to the common

law tort claims against Defendant Johnson, and will deny the motion with respect to the claims against Defendant Myrick.

## II.  BACKGROUND

As alleged in the Amended Complaint, Plaintiff was sentenced by Judge Demeo to serve six months of incarceration on March 22, 2019.  Am. Compl. ¶ 12, ECF No. 16.  Judge Demeo's order, directed to the superintendent of the D.C. Jail, stated the following: "It is HEREBY ORDERED that the defendant be released from your custody **at the conclusion of the Sentence of Incarceration** and into the custody of Representatives of CSOSA for a Bed-to-Bed Transfer to the Reentry and Sanctions Center (RSC)."  *Id.* ¶ 16; *see also* Defs.' Mot. Dismiss Ex. C, ECF No. 18-4 (emphasis in original).  Because Plaintiff had been incarcerated at the D.C. Jail since October 30, 2018, he was to be released into the custody of CSOSA on April 29, 2019 under the terms of Judge Demeo's order.  Am. Compl. ¶ 13.

On April 24, 2019, the District of Columbia Department of Corrections ("DOC") let CSOSA know that Plaintiff would be available on April 30, 2019 to be transferred to RSC.  *Id.* ¶ 17.  On April 26, DOC emailed CSOSA a second time to schedule his pickup on April 30.  *Id.* ¶ 18.  On May 1, DOC again contacted CSOSA to advise that Plaintiff's sentence had expired and that he was available for pickup and transfer to RSC.  *Id.* ¶ 19.  CSOSA did not respond.  *Id.*  After another five days, CSOSA responded and scheduled Plaintiff's pickup for May 15.  *Id.* ¶ 21.  Two days later, CSOSA rescheduled Plaintiff's pick up for May 23.  *Id.* ¶ 22.  Plaintiff remained in the custody of DOC at the D.C. Jail until May 23, when he was finally picked up and transferred to RSC, twenty-four days after the expiration of his sentence of incarceration.  *Id.* ¶¶ 24, 27.

In his Amended Complaint, Plaintiff brings four counts against Defendants arising out of his overdetention. *See id.* ¶¶ 39–88.  First, Plaintiff brings a count of false imprisonment against Defendants Johnson and Myrick. *Id.* ¶¶ 39–49.  He alleges that Defendants Johnson and Myrick, in their individual capacities, imprisoned him without justification beyond his release date. *See id.*  Second, Plaintiff brings a count of negligence against Defendants Johnson and Myrick for allegedly breaching their duty to release Plaintiff on his release date. *See id.* ¶¶ 50–63.  Plaintiff's third and fourth counts are brought under 42 U.S.C. § 1983 against the District of Columbia (the "District"). *See id.* ¶¶ 64–88.  Plaintiff alleges that DOC has a policy, custom, or practice of holding inmates to be transferred to a third party beyond their release dates if the third party fails to schedule a pickup. *Id.* ¶¶ 31–32.  He claims that this policy, custom, or practice resulted in violations of his substantive and procedural due process rights. *See id.*  Defendants have moved to dismiss each claim raised in the Amended Complaint,[1] arguing that Plaintiff has failed to allege sufficient facts to state a plausible claim to relief. *See* Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 18.  Defendants' motion is ripe for decision. *See* Pl.'s Opp'n, ECF No. 20; Defs.' Reply, ECF No. 21.

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

---

[1] Defendants had previously filed a motion to dismiss and motion for summary judgment, along with motions to file certain documents under seal, related to Plaintiff's initial Complaint. *See* Defs.' Mot. Dismiss and Mot. Summ. J., ECF No. 12; Defs.' Mot. for Leave to File Exhibits Under Seal, ECF Nos. 13, 14.  Because Plaintiff amended his complaint, the Court denies the initial motion to dismiss and motion for summary judgment as moot and grants the motions for leave to file under seal.

(per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The complaint's factual allegations are to be taken as true, and the court is to construe them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Notwithstanding this liberal construal, the court deciding a Rule 12 motion must parse the complaint for "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility requirement means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

## IV.  ANALYSIS

As noted above, Plaintiff brings claims of false imprisonment and negligence against Defendants Johnson and Myrick and claims under 42 U.S.C. § 1983 against the District. The Court addresses the claims in the order they appear in the Amended Complaint.

### A.  False Imprisonment

The common law tort of false imprisonment requires the establishment of two essential elements: "(1) the detention or restraint of one against his will, within boundaries fixed by the

defendants, and (2) the unlawfulness of the restraint." *Jones v. District of Columbia*, No. 16-cv-2405, 2019 WL 5690341, at *6 (D.D.C. June 13, 2019) (quoting *Faniel v. Chesapeake & Potomac Tel. Co.*, 404 A.2d 147, 150 (D.C. 1979)).  "A detention is presumed to be unlawful once a plaintiff alleges that he was imprisoned without process." *Smith v. District of Columbia*, 306 F. Supp. 3d 223, 260 (D.D.C. 2018) (citing *Clarke v. District of Columbia*, 311 A.2d 508, 511 (D.C. 1973)).  At that point, "[t]he burden then shifts to the defendant to justify the restraint as lawful," which constitutes "an element of a defense to be raised and proved by the defendant." *Id.*

Plaintiff alleges sufficient facts to state a plausible claim of false imprisonment against Defendant Myrick.  The Amended Complaint includes allegations that Defendant Myrick has the responsibility "to ensure that all inmates at the D.C. Jail are detained with sufficient authorizing documentation" and to process the release of inmates.  Am. Compl. ¶ 10; *see also id.* ¶ 46 ("[Defendant Myrick] had responsibility for checking the sentence calculation and other processes by which [Plaintiff] should have been released on his Release Date.").  Plaintiff alleges that Defendant Myrick "received the May 6, 2019 and May 8, 2019 emails from CSOSA stating that it would pick up [Plaintiff] May 15 and May 23, respectively." *Id.* ¶ 46.  This allegation plausibly suggests that Defendant Myrick personally knew about Plaintiff's situation.[2]  Plaintiff alleges that the imprisonment beyond his date of release from incarceration was unlawful because Judge Demeo's order required DOC to release him at the conclusion of his sentence of incarceration into the custody of CSOSA.  *See id.* ¶¶ 16, 27, 47–48.  In their motion, Defendants argue, without citation to any controlling or persuasive precedent, that Plaintiff's twenty-four-

---

[2] The extent of Defendant Myrick's personal involvement in this case may in fact prove to be minimal, which would undercut any claims against her in her individual capacity.

day overdetention was not unlawful because Judge Demeo's order required DOC to release Plaintiff to the custody of CSOSA and CSOSA failed to schedule his pickup until May 23. Defs.' Mot. at 17.  Although Judge Demeo's order called for a bed-to-bed transfer facilitated by CSOSA and CSOSA did not schedule the pickup until May 23, it does not necessarily follow that continued detention beyond the release date—without any additional process—is legal. Defendants offer no support for their position that continuing incarceration should be legally sanctioned, potentially indefinitely, in a situation such as Plaintiff's.  Moreover, arguments speaking to the legality of Plaintiff's incarceration beyond his release date relate to a possible affirmative defense, not to whether Plaintiff has pled sufficient facts to survive a motion to dismiss.  *See Smith*, 306 F. Supp. 3d at 260.  Because the Amended Complaint alleges facts speaking to the required elements as to Defendant Myrick, the Court finds Plaintiff has stated a claim that survives Defendants' motion to dismiss.

      Plaintiff has failed to allege sufficient facts to state a claim of false imprisonment against Defendant Johnson.  In contrast to the allegations against Defendant Myrick, the Amended Complaint contains no factual allegations "that would tend to show that [Defendant Johnson] played any role in detaining [P]laintiff past his court-ordered release date."  *Smith v. District of Columbia*, 149 F. Supp. 3d 128, 134 (D.D.C. 2015).  Other than the general allegations that Defendant Johnson was responsible for all day-to-day operations at the D.C. Jail as the warden, nothing in the Amended Complaint shows that Defendant Johnson played a personal role in restraining him.  *See* Defs.' Reply at 11–12; *see also Linares v. Jones*, No. 04-cv-247, 2007 WL 1601725, at *7 (D.D.C. June 4, 2007) (dismissing claims against mayor where the complaint "alleged no facts suggesting personal involvement" in the case).  And to the extent Plaintiff seeks to hold Defendant Johnson responsible for the actions of the employees he supervises, he cannot

do so.  As a public official, Defendant Johnson may not be held liable for the tortious actions of his employees.  *See, e.g.*, *King v. Kidd*, 640 A.2d 656, 666 (D.C. 1993) (holding that "as a matter of law only the employer, the District of Columbia, could be held liable for the tortious acts of one of its employees," and that the supervisory employees could not be held liable).  Accordingly, Plaintiff's false imprisonment claim against Defendant Johnson shall be dismissed.

### B.  Negligence

To prove negligence in the District of Columbia, a plaintiff must establish "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach."  *District of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C. 1984).

For reasons similar to those regarding the false imprisonment claim, the Court finds that Plaintiff has alleged sufficient facts to state a plausible claim of negligence against Defendant Myrick, but not Defendant Johnson.  Plaintiff claims that, due to his confinement and given her responsibility to ensure the timely release of inmates, Defendant Myrick owed him a duty to release him at the end of his term of incarceration.  Am. Compl. ¶ 52, 56; *see also* Pl.'s Opp'n at 42–43.  He alleges that Defendant Myrick had knowledge of his release date, the emails between DOC and CSOSA, and his overdetention.  *See* Am. Compl. ¶ 46.  These allegations show a personal involvement in his case distinct from Defendant Johnson.[3]  By failing to secure his transfer to RSC by the end of his term of incarceration, Plaintiff claims that Defendant Myrick breached the duty she owed him, resulting in restrictions on his liberty for twenty-four days beyond his term of incarceration.  *See id.* ¶ 62.  Although Defendant Myrick cannot be held

---

[3] As with the false imprisonment claim, evidence tending to show that Defendant Myrick did not have personal involvement in Plaintiff's case will undermine his negligence claim against her in her individual capacity.

liable for the actions of the employees she supervises, *see King*, 640 A.2d at 666, her alleged knowledge of Plaintiff's overdetention, demonstrated by her receipt of the emails from CSOSA, and her alleged responsibilities to ensure timely release of inmates plausibly establish the elements of a negligence claim.  At this early stage, these facts, accepted as true, are sufficient to survive a motion to dismiss.[4]  *See Wormley v. United States*, 601 F. Supp. 2d 27, 44–45 (D.D.C. 2009) (refusing to dismiss common law negligence claim stemming from overdetention in private prison).

In contrast, outside of the general allegations that Defendant Johnson is the warden, Plaintiff fails to allege that he was personally involved in this case.  The Amended Complaint "does not show that [Defendant Johnson] personally engaged in any action or committed any omission that resulted in or contributed to [P]laintiff's overdetention, or even that [Defendant Johnson] had any knowledge of [P]laintiff's predicament." *Smith*, 149 F. Supp. 3d at 135.  To state a proper negligence claim against Defendant Johnson in his individual capacity, Plaintiff had to demonstrate some sort of personal involvement in his injury.  *See id.* ("In other words, plaintiff has failed to show that [the defendant] personally breached any duty owed to plaintiff, or that any actions or omissions by [the defendant] were the proximate cause of his injury."). *See also Linares*, 2007 WL 1601725, at *7 (dismissing negligence claim "[i]n the absence of 'any factual indication that [the defendant] was connected in any way with the event[s] giving

---

[4] Defendants put forth arguments suggesting that there was no breach of duty, because DOC attempted to schedule Plaintiff's pickup, and that Plaintiff cannot show that Defendants proximately caused Plaintiff's injury, because CSOSA's failure to schedule a timely pickup caused the overdetention.  *See* Defs.' Mot. at 18.  But whether Defendant Myrick actually breached the duty owed to Plaintiff and whether Plaintiff can establish proximate cause are questions appropriately addressed at a later stage of this litigation.  *See Wormley*, 601 F. Supp. 2d at 45 ("The Court need not at this stage determine whether [the defendant] in fact owed a duty to plaintiff or whether plaintiff was in fact unlawfully detained.  Plaintiff does state a claim that could *plausibly* entitle her to relief." (emphasis in original)).

rise to the lawsuit'" (quoting *Eskridge v. Jackson*, 401 A.2d 986, 989 (D.C. 1979)).  The Amended Complaint fails to show this personal connection between Defendant Johnson and this case.  As such, the negligence claim against Defendant Johnson will be dismissed.

### C. Section 1983 Claims

Section 1983 provides a cause of action against:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983.  To properly state a claim against a municipality under Section 1983, a plaintiff "must allege both 'a violation of [her] rights under the Constitution or federal law' and 'that the municipality's custom or policy caused the violations.'"  *Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 90 (D.D.C. 2011) (quoting *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004)).  Section 1983 does not allow for claims to be brought "against a municipality for an injury inflicted by a municipal employee or officer."  *Odom v. District of Columbia*, 248 F. Supp. 3d 260, 266 (D.D.C. 2017).  Instead, a plaintiff must show "that a government policy or custom was the 'moving force' behind the alleged constitutional injury."  *Id.* (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)).  In other words, a plaintiff bears "[the] 'burden to establish that a municipality has a custom or practice abridging [his] constitutional or statutory rights,'" *Bonaccorsy v. District of Columbia*, 685 F. Supp. 2d 18, 27 (D.D.C. 2010), and showing an "affirmative link" between the municipal policy and the alleged constitutional violation, *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  Because the Court finds that Plaintiff has not properly alleged the existence of

9

a municipal policy, it does not address whether Plaintiff sufficiently pled a violation of his substantive and procedural due process rights.

The D.C. Circuit has described four ways a plaintiff can show the existence of a municipal policy: (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Id.* Plaintiff maintains that the Amended Complaint properly alleges the existence of a municipal policy under the first, third, and fourth methods explained by the D.C. Circuit in *Baker*. *See* Pl.'s Opp'n at 13. The Court addresses each in turn.

1. Explicit Setting of a Policy in Violation of the Constitution

Plaintiff has not pled facts that show an explicit setting of a policy in violation of the Constitution. This method of demonstrating the existence of a municipal policy requires showing that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. The Amended Complaint does not identify any policy that has been officially adopted by DOC or the District. *See* Am. Compl. ¶¶ 29–37 (discussing the alleged District policies without identifying any specific policy statements, ordinances, regulations, or decisions officially adopted). Instead, it states in conclusory terms that DOC has a policy of holding persons such as Plaintiff, who are to be transferred into the custody of a third party, "until the third party receives them, regardless [of] how long that takes past the inmate's

Release Date, without providing notice and a hearing to the inmate." *Id.* ¶ 31. Although in his opposition brief Plaintiff points to a potential source of the alleged policy, *see* Pl.'s Opp'n at 13–14, the Amended Complaint lacks reference to any specific explicit policy.[5] Plaintiff may not amend or supplement his Amended Complaint through his opposition brief. *See Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014). As it stands, Plaintiff's operative complaint does not allege facts that show that an explicit policy adopted by the District led to the alleged constitutional violations. *See Coleman*, 828 F. Supp. 2d at 91 (finding the plaintiff failed to show an explicit policy where complaint "never identifie[d] which 'officially adopted' ordinance or decision . . . *explicitly* set a policy in violation of the Constitution" (emphasis in original)).

2.  Custom Adopted Through Knowing Failure to Act

Plaintiff has not sufficiently alleged that the District has adopted "through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom.'" *Baker*, 326 F.3d at 1306. To show adoption of a custom in this way, Plaintiff must demonstrate "a persistent, pervasive practice of the city officials . . . , which although not officially adopted, was so common and settled as to be considered a custom or policy." *Coleman*, 828 F. Supp. 2d at 92 (quoting *Carter v. District of Columbia*, 795 F.2d 116, 125 (D.C. Cir. 1986)). "Generally, a plaintiff 'sufficiently pleads a § 1983 [custom or policy] claim when his complaint refers to specific incidents that plausibly show a custom or pattern of behavior.'" *Wells v. Hense*, 235 F. Supp. 3d 1, 12 (D.D.C. 2017) (quoting *Patrick v. District of*

---

[5] As explained below, Plaintiff will be allowed to amend his complaint regarding the existence of a custom adopted through a knowing failure to act, the third method of demonstrating the existence of a municipal policy explained in *Baker*. Plaintiff may also add factual allegations with respect to any explicit policies that support his theory of liability, including the potential source referenced in Plaintiff's opposition brief.

*Columbia*, 179 F. Supp. 3d 82, 87 (D.D.C. 2016)). "[M]erely speculating that an unidentified policy and uncorroborated practice or custom exists without providing any factual heft to support the allegation is insufficient to state a claim under § 1983." *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 59 (D.D.C. 2011).

Although Plaintiff alleges that DOC has a longstanding policy or custom of holding inmates who must be transferred to the custody of a third party past their release dates until the third party receives them, the Amended Complaint contains no factual allegations that, when accepted as true, establish the existence of such a pattern of behavior that would constitute a custom. In his attempt to demonstrate the existence of a custom, Plaintiff points to one case where DOC held an inmate for a month after the sentencing judge had ordered that the inmate receive credit for time served, and to another case "where the DOC held an inmate for 77 days on a [United States Marshal Service] Form 41 intransit hold instead of releasing him the next day or giving him notice of a hearing." Am. Compl. ¶ 37. Although these allegations involve overdetention of an inmate, neither of these examples, which do not involve an inmate transfer to a third party at the conclusion of a sentence of incarceration, are similar to the events that led to Plaintiff's claims. *See Coleman*, 828 F. Supp. 2d at 93 (finding no pattern of behavior where examples "have little in common with" the plaintiff's claims). The two examples do not provide sufficient factual support to the claim that DOC acted in accordance with a longstanding pattern of behavior or custom in Plaintiff's case. Plaintiff argues that his allegation that DOC has a longstanding practice of holding inmates scheduled for transfer to a third party beyond their release dates coupled with common sense should allow his claim to survive Defendants' motion to dismiss. Pl.'s Opp'n at 20. But Plaintiff's conclusory allegation that a longstanding practice

12

exists, which is just a recitation of an essential element of his § 1983 claim against the District, cannot survive without additional factual support. *See Trimble*, 779 F. Supp. 2d at 59.

Plaintiff also claims that the business-as-usual treatment of his overdetention supports a reasonable inference that DOC has a custom of holding inmates beyond release dates in similar circumstances and that policymakers knew or should have known about it. *See* Pl.'s Opp'n at 18–19, 22–23. Based on the facts alleged, the Court does not find that such an inference is reasonable. The facts alleged in the Amended Complaint make clear that DOC emailed CSOSA to schedule a pickup for Plaintiff and that CSOSA did not respond before his release date. Am. Compl. ¶¶ 17–19. The facts alleged further establish that DOC and CSOSA scheduled and then rescheduled his pickup date. *Id.* ¶¶ 21–23. Beyond the fact that sending emails to schedule inmate pickups could be considered business as usual, the Court does not find any facts in the Amended Complaint that suggest that overdetaining inmates in situations similar to Plaintiff's is routine. Although DOC could have done more to ensure that Plaintiff was released in a timely manner, the facts alleged do not suggest that there is a pattern of behavior that amounts to a policy or custom.

The Court understands Plaintiff's argument that the alleged custom involves "a straightforward and common fact pattern where a third party does not pick up the inmate by his or her Release Date." Pl.'s Opp'n at 20. Perhaps DOC does routinely hold inmates beyond their release dates when a third party fails to takeover custody or schedule a pickup.[6] If a pervasive

---

[6] The District's defense to the substantive allegations appears to be that CSOSA was responsible for the entire incident because it failed to schedule Plaintiff's pickup. *See* Def.'s Mot. at 7 ("[Plaintiff's] overdetention resulted from CSOSA's failure to timely schedule the transfer."); *id.* at 15 ("[T]he moving force behind the delayed transfer was CSOSA's failure to timely schedule [Plaintiff's] pickup date."); *id.* at 18 ("[P]laintiff's delayed bed-to-bed transfer to the RSC was proximately caused by CSOSA's failure to timely schedule [Plaintiff's] pickup date."). It is not clear to the Court, however, why CSOSA, rather than DOC, is responsible for

13

pattern of overdetention in these circumstances exists, though, the factual allegations establishing that pattern do not appear in the Amended Complaint. Alleging in a conclusory manner that what Plaintiff experienced routinely occurs without any additional factual scaffolding is not enough. *See Odom*, 248 F. Supp. 3d at 267–68 (dismissing claim where the plaintiffs alleged the existence of a pattern "without pleading any facts that would demonstrate a pattern"). However, given the early stage in the litigation, and the possibility that such a custom could be established with further factual allegations about similar cases, the Court will allow Plaintiff to amend his complaint.

### 3. Deliberate Indifference

Finally, Plaintiff has not pled facts that demonstrate a failure "to respond to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker*, 326 F.3d at 1306. Deliberate indifference is determined objectively and "means that 'faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of *inaction*.'" *Coleman*, 828 F. Supp. 2d at 94 (quoting *Warren*, 353 F.3d at 39 (emphasis added)). Typically, establishing deliberate indifference is shown "by demonstrating the municipality's failure to train its employees," but it can also be established by showing "a municipality's failure to respond to repeated complaints about misconduct." *Harris v. Gov't of District of Columbia*, No. 18-cv-2390, 2019 WL 3605877, at *4 (D.D.C. Aug. 6, 2019). "[A] plaintiff pleading a deliberate indifference claim must allege specific facts that would demonstrate the alleged pattern of

---

ensuring that inmates are released at the end of their terms of incarceration in situations like this. The District's position implicitly suggests that it *is* DOC's policy to wait until a third party schedules an inmate for pickup in analogous cases. Regardless of this implication, the District's litigation position in this case, or in other similar cases, is not reflected in the factual allegations of the Amended Complaint.

misconduct." *Id.*; *see also Bell v. District of Columbia*, 82 F. Supp. 3d 151, 159 (D.D.C. 2015) (stating that a complaint should state the "number, nature, and timing . . . of [the] misconduct").

For similar reasons that Plaintiff has failed to establish a custom, he has not alleged facts that show a pattern of misconduct that municipality officials ignored. The Amended Complaint explains the events leading to Plaintiff's overdetention and briefly mentions two other cases involving overdetention. *See* Am. Compl. ¶¶ 12–28, 37. But as explained above, the Court does not find that the other two cases of overdetention, at least based on the facts included in the Amended Complaint, are sufficiently similar to Plaintiff's case to establish a pattern of misconduct. Plaintiff's Amended Complaint does not include the kind of specific factual allegations establishing a pattern that courts have previously found sufficient to survive a motion to dismiss. *See Warren*, 353 F. 3d at 40 (allowing claim to move forward based on allegation that prison officials "stuck the same needles in everybody's arms to draw blood"); *Singh v. District of Columbia*, 881 F. Supp. 2d 76, 87 (D.D.C. 2012) (allegations that plaintiff had three traffic tickets over the span of eighteen days and reported the harassment on five separate occasions adequately alleged a custom or policy or deliberate indifference to harassment). Without plausibly demonstrating a pattern of misconduct, Plaintiff cannot establish a municipal policy through deliberate indifference. *See Harris*, 2019 WL 3605877, at *5 (allowing § 1983 claim to go forward where plaintiff "allege[d] a substantial body of facts" demonstrating a pattern of misconduct and deliberate indifference).

* * *

Because Plaintiff has not alleged sufficient facts demonstrating that a policy, custom or practice of the District caused the alleged constitutional violations, the Court agrees with Defendants that he has failed to state a plausible claim to relief under Section 1983 and will grant

their motion to dismiss these claims.  However, given Defendants' position that Plaintiff's overdetention was legally justified or otherwise required by Judge Demeo's order, *see* Defs.' Mot. at 17 ("[Plaintiff's] detention in the D.C. Jail until May 23, 2019 was not unlawful because . . . [he] could only be released to the custody of CSOSA"), the Court perceives a possibility that a policy or custom similar to that described by Plaintiff may in fact exist.  The Court has found that the factual allegations in the Amended Complaint are insufficient to state a claim of municipality liability against the District.  But because this litigation is still in an early stage, the Court will allow Plaintiff to amend his complaint.[7]

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 18) is **GRANTED IN PART AND DENIED IN PART**.  Defendants' initial motion to dismiss and motion for summary judgment (ECF No. 12) is **DENIED AS MOOT**.  Defendants' motions for leave to file exhibits under seal (ECF Nos. 13, 14) are **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 8, 2021                                                                RUDOLPH CONTRERAS
                                                                                                          United States District Judge

---

[7] Even though the Court's decision dismisses all the federal claims in this case, the Court will retain jurisdiction because it is allowing Plaintiff to amend his complaint.  *See Deppner v. Spectrum Health Care Resources, Inc.*, 325 F. Supp. 3d 176, 190 (D.D.C. 2018) ("[W]hen a court dismisses all federal claims in a suit, it has the discretion to exercise—or decline to exercise—supplemental jurisdiction over any state-law claims that remain.").  Although the balance of factors will normally "point toward declining to exercise jurisdiction over the remaining state-law claims," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), the Court finds it appropriate given the circumstances to retain jurisdiction for the time being.  The Court will reevaluate whether it is appropriate to exercise supplemental jurisdiction over any remaining state law claims if Plaintiff fails to further amend his complaint or if his further amended federal claims do not survive dismissal.