UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CHRISTOPHER TYSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-1450 (RC) |
| | : | | |
| v. | : | Re Document No.: | 42 |
| | : | | |
| DISTRICT OF COLUMBIA, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT

## I. INTRODUCTION

Plaintiff Christopher Tyson alleges that he was detained in D.C. Jail for nearly a month past the expiration of his sentence. He has brought suit against the District of Columbia and Jeanette Myrick (collectively, "Defendants").[1] Ms. Myrick was the Lead Supervisory Legal Instruments Examiner in the Record Office of the D.C. Department of Corrections ("DOC"). 2d Am. Compl. ¶ 7, ECF No. 29. As alleged, when Mr. Tyson's sentence expired on or about April 29, 2019, the Court Services and Offender Supervision Agency ("CSOSA") was supposed to take him into custody and place him in the Reentry and Sanctions Center ("RSC") for inpatient treatment. *Id.* ¶¶ 19–38. But Mr. Tyson had to wait longer; he was not released or transferred from D.C. Jail until May 23, 2019. *Id.* ¶ 32. Mr. Tyson has filed claims against Ms. Myrick for false imprisonment and negligence, and claims against the District of Columbia for violation of

---

[1] As noted in the Court's previous opinion, Mr. Tyson's First Amended Complaint also asserted claims against Lennard Johnson, Warden of the D.C. Jail, which the Court dismissed in its prior opinion. *Tyson v. District of Columbia*, No. 20-cv-1450, at 7, 9 (D.D.C. Mar. 8, 2021) (ECF No. 27).

his constitutional rights. *Id.* ¶¶ 76–127. Pending before the Court is Defendants' Motion for Leave to File Third-Party Complaint ("Defs.' Mot."), ECF No. 42. For the reasons stated below, the Court will grant the motion.

## II. BACKGROUND

The Court previously described the alleged facts of this case in several rulings and thus confines its recital here to the most relevant alleged facts. *See* Mem. Op., *Tyson v. District of Columbia*, No. 20-cv-1450, at 2–3 (D.D.C. Oct. 19, 2021), ECF No. 37; Mem. Op., *Tyson v. District of Columbia*, No. 20-cv-1450, at 2–3 (D.D.C. Mar. 8, 2021), ECF No. 27. On March 22, 2019, Judge Demeo of the D.C. Superior Court sentenced Mr. Tyson to six months of incarceration with credit for time served. 2d Am. Compl. ¶¶ 20–22; *see also* Ex. 1 to Defs.' Mot. Dismiss (sentencing order), ECF No. 30. The sentencing order instructed that at the conclusion of his incarceration, Mr. Tyson should be transferred to the custody of CSOSA for inpatient treatment at the RSC. 2d Am. Compl. ¶¶ 22–24. CSOSA, which is part of the federal executive branch, supervises "all offenders placed on probation" by the D.C. Superior Court. *See* D.C. Code § 24-133(a), (c)(3); *see also* Ex. A to Defs.' Mot., Third-Party Compl. ("Third-Party Compl.") at 1, ECF No. 42-1.

Mr. Tyson's sentence expired on or about April 29, 2019. 2d Am. Compl. ¶ 21. On April 24, 2019, the DOC emailed CSOSA to schedule Mr. Tyson's pickup and transfer to RSC, explaining that Mr. Tyson's sentence would expire on April 30, 2019. *Id.* ¶ 25. The DOC emailed CSOSA a second time on April 26, 2019 to schedule Mr. Tyson's transfer. *Id.* ¶ 26. Having received no response, the DOC tried a third time on May 1, 2019, with the final email advising CSOSA that Mr. Tyson's sentence had expired. *Id.* ¶ 27. CSOSA finally responded on May 6, 2019, in a memo addressed to Ms. Myrick, informing her that it had

2

scheduled Mr. Tyson's pickup for May 15.  *Id.* ¶ 29.  Two days later, CSOSA rescheduled Mr. Tyson's pickup for May 23, 2019.  *Id.* ¶ 30.  Mr. Tyson was finally released to CSOSA on May 23, 2019, about twenty-four days after his sentence expired.  *Id.* ¶¶ 32, 35.

Mr. Tyson filed suit in the D.C. Superior Court on April 23, 2020, and Defendants removed it to this Court on June 1, 2020.  *See* Notice of Removal, ECF No. 1.  Defendants moved for dismissal and summary judgment on June 29, 2020.  *See* Defs.' Johnson & Myrick's Mot. Dismiss & Defs.' District of Columbia, Johnson & Myrick's Mot. Summ. J., ECF No. 12.  On July 17, 2020, Mr. Tyson filed an amended complaint and Defendants responded on August 5, 2020 with another motion for dismissal.  *See* 1st Am. Compl., ECF No. 16; Defs.' Mot. Dismiss, ECF No. 18.  This Court granted the District's motion to dismiss Mr. Tyson's claims under 42 U.S.C. § 1983 but granted Mr. Tyson leave to file an amended complaint.  *See* Mem. Op., *Tyson v. District of Columbia*, No. 20-cv-1450, at 15–16 (D.D.C. Mar. 8, 2021), ECF No. 27.  Subsequently, on April 7, 2021, Mr. Tyson filed his second amended complaint.  *See* 2d Am. Compl.  Defendants then moved for dismissal and reconsideration on April 21, 2021, and this Court denied those motions on October 19, 2021.  *See* Defs.' Mot. Dismiss & Alternative Def. Myrick Mot. Recons., ECF No. 30; Mem. Op., *Tyson v. District of Columbia*, No. 20-cv-1450, at 27 (D.D.C. Oct. 19, 2021), ECF No. 37.  The Court then issued a Scheduling Order, which set a deadline of December 20, 2021 for the parties to propose amendments or add other parties.  *See* Scheduling Order, ECF No. 41.  On December 20, 2021, Defendants filed their Motion for Leave to File Third-Party Complaint.  *See* Defs.' Mot.  This motion is now ripe for decision.

### III.  LEGAL STANDARD

Rule 14(a)(1) provides that defendants may file a third-party complaint either as of right or with leave of court, depending on when it is filed.  "[T]he third-party plaintiff must, by

3

motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a)(1). "A motion for leave to file a third party complaint is addressed to the sound discretion of the trial court." *fMillers Cap. Ins., Co. v. Hydrofarm, Inc.*, 340 F.R.D. 198, 210 (D.D.C. 2022) (quoting *Kopan v. George Washington Univ.*, 67 F.R.D. 36, 38 (D.D.C. 1975)). "Numerous factors guide the court's discretion in determining whether the third-party complaint should proceed, including: '(1) potential prejudice to plaintiffs or [the third-party defendant]; (2) whether the impleader will add new and complicated issues that will threaten the orderly and prompt resolution of the case and delay the trial; (3) whether defendants unreasonably delayed in filing the third party complaint; and (4) whether the third party complaint is so insubstantial that it fails to state a claim.'" *Id.* (quoting *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, No. 04-cv-498, 2006 WL 1102767, at *1 (D.D.C. Apr. 26, 2006)). "Additionally, courts must consider the underlying purpose of Rule 14, 'which is to avoid circuity of action and eliminate duplication of suits based on closely related matters.'" *Id.* (quoting *Disability Rts. Council,* 2006 WL 1102767, at *1); *see* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1443 (3d ed.) (same).

## IV.  ANALYSIS

At the outset, the parties dispute whether Defendants filed their motion in compliance with the Scheduling Order's deadline. As it turns out, Rule 14(a)'s standard only governs if this deadline was met. The Court accordingly addresses this issue first and finds that Defendants complied with the Scheduling Order. The Court then turns to the discretionary factors governing whether to grant leave to file under Rule 14(a). For the reasons set forth below, the Court will grant Defendants' motion.

### A. Scheduling Order

Defendants' motion complied with the Scheduling Order.  There is no dispute that Defendants filed their motion on December 20, 2021, the last day of the deadline to "join[]" "any other parties to this action."  Scheduling Order ¶ 1.  Mr. Tyson, however, argues that Defendants had not successfully "*joined*" any other party as of December 20, 2021—they had merely "*sought*" to do so by filing their motion.  *See* Pl.'s Opp'n Mot. Leave to Add New Party ("Pl.'s Opp'n") at 3, ECF No. 43 (emphases in original)).  In support of this distinction, Mr. Tyson points to a separate provision of the Scheduling Order, providing that "any party proposing amendments to the pleading *must seek leave to do so*" by December 20, 2021.  Scheduling Order ¶ 2 (emphasis added).  According to Mr. Tyson, Defendants merely sought leave to join a party at this deadline, and therefore the motion is untimely under the "plain language" of the Scheduling Order.  Pl.'s Opp'n at 3 n.2.  While Mr. Tyson's textual argument has some appeal, he has not pointed to any case in this or any district that construes scheduling order deadlines with this level of rigidity.  To the contrary, judges in this District routinely treat a *motion* to join parties or amend a pleading as sufficient to meet a scheduling order's deadline, even when the scheduling order states that parties shall be joined or pleadings shall be amended by that deadline.  *See, e.g.*, Scheduling Order, *Brooks v. Clinton*, No. 10-cv-00646 (D.D.C. Feb. 17, 2011), ECF No. 13 ("Additional parties shall be joined or pleadings amended by March 4, 2011."); *Brooks*, 841 F. Supp. 2d 287, 296 (D.D.C. 2012) ("The Court's scheduling order . . . authorized *the filing of any motion* proposing amendment of the pleadings until March 4, 2011." (emphasis added)); Scheduling Order, *City of Moundridge v. Exxon Mobil Corp.*, No. 04-cv-940 (D.D.C. Feb. 23, 2007), ECF No. 84 ("[j]oinder of parties; amended complaint" due "May 24, 2007"); *City of Moundridge*, 250 F.R.D. 1, 7 (D.D.C. 2008) (where plaintiffs moved

on day of deadline for leave to add parties, court found "plaintiffs' motion was timely filed before the deadline to amend the complaint or join parties set in the scheduling order"); Order, *Imperial Valet, Inc. v. Woodard*, No. 14-cv-01585 (Apr. 30, 2015), ECF No. 23 ("Parties shall join additional parties and make amendments to their pleadings on or before June 30, 2015[.]"); *Imperial Valet*, 2015 WL 13158507, at *1 (D.D.C. July 17, 2015) (defendant's motion for leave to file counterclaim submitted one day before the deadline was timely). Accordingly, Defendants timely complied with this Court's Scheduling Order to add another party to this case.

### B. Rule 14(a)

Having established that Defendants' motion complied with the Scheduling Order, the Court proceeds to evaluate the motion under Rule 14(a).[2] Here, Defendants appropriately seek leave to file their motion because they submitted it more than fourteen days after serving their answer. Fed. R. Civ. P. 14(a)(1); Defs.' Mot. at 1.[3] The Court will therefore examine if the discretionary factors articulated in *fMillers* warrant granting leave here. To recall, these factors include: (1) potential prejudice to Mr. Tyson; (2) whether impleader will introduce complex issues; (3) whether Defendants unreasonably delayed in filing the motion; and (4) whether the

---

[2] The Court rejects Mr. Tyson's argument that it should decide this motion under Rule 16(b)(4)'s "good cause" standard. Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Where, as here, Defendants timely filed their motion, they do not need to modify the Scheduling Order. *See fMillers*, 340 F.R.D. at 220 ("[T]o the extent an impleader motion is filed after a deadline set by a Rule 16 Scheduling Order, courts consider whether the movant has shown 'good cause' to modify the scheduling order.").

[3] Defendants filed this motion on December 20, 2021. *See* Defs.' Mot. Ms. Myrick filed an answer to Mr. Tyson's Amended Complaint on March 23, 2021. *See* ECF No. 28. After Mr. Tyson filed a Second Amended Complaint, *see* ECF No. 29, both Defendants filed an answer to the Second Amended Complaint on November 2, 2021, *see* ECF No. 39. The Court need not decide which of these answers constitutes the "original answer" specified by Rule 14(a)(1), because Defendants' motion on December 20, 2021 came more than fourteen days later than the filing of either answer.

third-party complaint fails to state a claim.  *See fMillers*, 340 F.R.D. at 210 (quoting *Disability Rts. Council*, 2006 WL 1102767, at *1)).  As will be explained below, these factors weigh in favor of granting the motion.

First, the Court considers whether adding the United States would potentially prejudice Mr. Tyson.  Mr. Tyson cites *Heller v. District of Columbia*, 290 F.R.D. 1, 4 (D.D.C. 2013), to argue that this case's "position along the litigation path" is indicative of the prejudice he would suffer if the United States is added.  Pl.'s Opp'n at 14, 23.  He predicts that because the motion to dismiss stage in this case lasted "almost a year and a half," the United States' motions "are likely to consume the next year and a half if the Defendants' motion is granted, thereby derailing the whole discovery process."  *Id.* at 23–24.  According to Mr. Tyson, this "will likely delay trial for several months."  *Id.* at 14 (citing *Campbell v. N.J. Transit Rail Operations Inc.*, No. 17-cv-5250, 2021 WL 5413983 (D.N.J. Nov. 18, 2021)).

The Court disagrees that Mr. Tyson would be prejudiced by the addition of the United States.  For starters, "some delay is expected with the majority of Rule 14 motions . . . . If such delay was dispositive in dismissing Rule 14 Motions, few impleader motions would be granted." *fMillers*, 340 F.R.D. at 218 (quoting *Hitachi Cap. Am. Corp. v. Nussbaum Sales Corp.*, No. 09-cv-731, 2010 WL 1379804, at *5 (D.N.J. Mar. 30, 2010)) (internal quotation marks omitted). The cases Mr. Tyson cites only demonstrate the relative lack of prejudice, if any, that he will experience here.  In *Campbell*, the defendants sought leave to file a third-party complaint over two years after discovery began and three years after the date listed in the court's scheduling order.  2021 WL 5413983, at *1–2.  By contrast, Defendants here filed the pending motion "a month into the discovery period" and on the exact date listed in the Scheduling Order.  *See* Pl.'s Opp'n at 14; Defs.' Mot.  In fact, discovery in this case does not close until November of this

7

year.  Scheduling Order ¶¶ 7–8.  Mr. Tyson's reliance on *Heller* is also misplaced:  that case observed that "the further the case has progressed, the more likely the opposing party is to have relied on the unamended pleadings."  290 F.R.D. at 4.  But here, Defendants' motion poses little risk of sandbagging Mr. Tyson because their motion simply seeks contribution from the United States for being at least partially responsible for Mr. Tyson's alleged injuries.  Unlike the defendants in *Heller* who would need to modify their litigation strategy in response to an amended pleading, Mr. Tyson need not necessarily take any action because his claims against the District Defendants remain unchanged by impleader.  Furthermore, this litigation has only recently progressed past the pleading stage.  In the past two years, Defendants have filed motions to dismiss in response to Mr. Tyson's complaint, first amended complaint, and second amended complaint, and therefore had "no reason" to implead another party while filing those dispositive motions.  Defs.' Reply ("Reply") at 2, ECF No. 44.  Even if adding the United States now injects some delay to the proceedings, this is what Rule 14(a) naturally contemplates.  *See fMillers*, 340 F.R.D. at 218; Fed. R. Civ. P. 14(a)(1) (envisioning that a defendant may file a third-party complaint "after serving its original answer").  In short, the prejudice factor does not discourage granting the motion here.[4]

---

[4] Although potential prejudice to the plaintiff is the "core question" of this factor, *fMillers*, 340 F.R.D. at 219, some courts also examine the potential prejudice to the third-party plaintiff or the third-party defendant.  *See, e.g.*, *Disability Rts. Council*, 2006 WL 1102767, at *1–2.  Here, Defendants may be prejudiced without impleader by having to bring a separate contribution action against the United States because that could possibly "compound [their] legal costs."  *fMillers*, 340 F.R.D. at 219–20.  On the other hand, the United States could be prejudiced by impleader because in the event Mr. Tyson's claims do not prevail against Defendants, there would be no need for a separate contribution action against the United States.  In any event, these considerations are "not dispositive"—"[t]he focus here is on prejudice to the original plaintiff [Mr. Tyson], which is either small or not supported."  *fMillers*, 340 F.R.D. at 220.

Second, the Court considers whether the impleader will add complex issues to the case that will delay it. To be sure, seeking contribution from the United States raises additional considerations—what Mr. Tyson calls "a can of jurisdictional worms." Pl.'s Opp'n at 2, 20. Mr. Tyson correctly argues that the United States, the purported third-party defendant, is presumptively entitled to sovereign immunity. *Id.* at 20. "[T]he United States, as sovereign, is immune from suit unless Congress has expressly waived that immunity." *Buaiz v. United States*, 471 F. Supp. 2d 129, 134 (D.D.C. 2007); *see also Maynard v. Architect of the Capitol*, 544 F. Supp. 3d 64, 69–70 (D.D.C. 2021) (sovereign immunity implicates the court's subject matter jurisdiction). But Congress "waived the sovereign immunity of the United States" for claims against it under the Federal Tort Claims Act ("FTCA"). *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (quotation marks and citation omitted). The FTCA provides that with respect to tort claims, "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "The substantive law that governs in an FTCA action is that of the state where the act or omission occurred." *Hudert v. Alion Sci. & Tech. Corp.*, 429 F. Supp. 2d 99, 106 (D.D.C. 2006) (citing 28 U.S.C. § 1346(b)(1)).

For purposes of this motion, the Court rejects Mr. Tyson's suggestion that impleader would introduce complex issues, because Defendants' path has already been trodden. Defendants proceed under a well-established joint-tortfeasor theory of liability under D.C. law, seeking contribution from the United States "for all or a portion of any sum that is adjudged against them." Third-Party Compl. at 4. The Supreme Court has ruled on this very issue and held that under the FTCA, the United States may be impleaded as a third-party defendant for being a joint tortfeasor. *See United States v. Yellow Cab Co.*, 340 U.S. 543, 556 (1951) ("We

9

therefore conclude that the Federal Tort Claims Act carries the Government's consent to be sued for contribution not only in a separate proceeding but also as a third-party defendant."); *see also GAF Corp. v. United States*, 818 F.2d 901, 904 n.6 (D.C. Cir. 1987) ("Government may be sued as third-party defendant in action for contribution." (citing *Yellow Cab*)); *Busey v. Washington*, 225 F. Supp. 416, 421 (D.D.C. 1964) ("[T]he Federal Tort Claims Act empowers the United States District Court to require the United States to be impleaded as a third party defendant and to answer the claim of a joint tortfeasor for contribution as if the United States were a private individual."). Here, Mr. Tyson brought claims against Defendants sounding in tort, including false imprisonment (Count 1) and negligence (Count 2), *see* Mem. Op. at 2, ECF No. 37, and Defendants in turn seek contribution from the United States for "negligent . . . acts, errors, or omissions of the United States," Third-Party Compl. at 3. Thus, the Court is satisfied that for the purpose of deciding this motion, impleading the United States will not necessarily saddle the case with significantly complex issues.[5] Moreover, adding the United States to the case may provide significant benefits in facilitating discovery from all parties and, if structural changes are required to resolve potential problems identified in this litigation, facilitating settlement discussions or imposing effective remedies by the Court.

Third, the Court considers whether Defendants unreasonably delayed in filing this motion. Mr. Tyson protests that Defendants filed their motion at the "eleventh hour" "almost two years after it knew the facts supporting its motion." Pl.'s Opp'n at 1. He claims this was a "strategic decision to delay the proceedings." *Id.* at 21. But as discussed above, Defendants did

---

[5] Of course, the United States will have an opportunity to raise its own arguments and defenses. But at this stage, the Court agrees with Defendants that "[i]t is not the defendants' burden to address the *potential* defenses that the United States may raise in response to their proposed third-party complaint." Reply at 6 (emphasis in original).

not seek to implead the United States in that two-year period because it was filing dispositive motions in response to each iteration of Mr. Tyson's complaint. In addition, at the parties' meet and confer on November 9, 2021, Mr. Tyson did not express "any concern about whether the defendants intended to add other parties"; in fact, as the Scheduling Order reveals, Mr. Tyson "agreed to the December 20, 2021 deadline set by this Court" for adding other parties. Reply at 3. Indeed, the date Defendants filed their motion—December 20, 2021—is not any "different[] from what the parties proposed." Pl.'s Opp'n at 8 n.3. The Court accordingly does not find any unreasonable delay here.

Fourth, the Court considers whether the third-party complaint can state a claim. To be clear, "[t]his is not the 'failure to state a claim' language of Rule 12(b)(6)." *fMillers*, 340 F.R.D. at 223. Instead, the Court need only determine that the third-party complaint is not "obviously unmeritorious." *Id.* at 224 (quotation marks and citation omitted); *see also Disability Rts. Council*, 2006 WL 1102767, at *1 ("whether the third party complaint *is so insubstantial* that it fails to state a claim" (emphasis added)). Here, the third-party complaint clears this threshold because, for purposes of this stage, it states a claim for contribution. "Under District of Columbia law, a right of contribution exists amongst joint tortfeasors." *fMillers,* 340 F.R.D. at 224 (citing *District of Columbia v. Wash. Hosp. Ctr.*, 722 A.2d 332, 336 (D.C. 1998)). Mr. Tyson contends that impleading a party requires derivative liability and that Rule 14(a) therefore does not permit a claim that plaintiff can assert directly against the third-party defendant. Pl.'s Opp'n at 16. This misses the point, however, because Rule 14(a) plainly permits impleader using a joint tortfeasor theory of liability under D.C. law. *See, e.g.*, *fMillers*, 340 F.R.D. at 224, 226–27 (explaining why right of contribution under joint tortfeasor theory is derivative). Here, Defendants properly bring an "action for indemnification and contribution" seeking "recovery

from the United States" because of its fault "in whole or in part" for Mr. Tyson's alleged injuries. Defs.' Mot. at 3, 5–6; *see also* Reply at 4 (citing *Sperling v. Wash. Metro. Area Transit Auth.*, 498 F. Supp. 2d 288, 290 (D.D.C. 2007)). Thus, the third-party complaint, for purposes of this stage, states a claim for contribution.

Finally, the Court finds that permitting impleader here is consistent with "the considerations of judicial economy that underlie Rule 14." *Diginet, Inc. v. W. Union ATS, Inc.*, 958 F.2d 1388, 1395 (7th Cir. 1992). Because Defendants' claim for contribution against the United States arises from a common set of facts—the nearly month-long delay of Mr. Tyson's release from D.C. Jail—permitting the third-party complaint would most certainly avoid potential "circuity" and "duplication of suits." *See fMillers*, 340 F.R.D. at 211 (citing *Disability Rts. Council*, 2006 WL 1102767, at *1)).[6] Accordingly, the Court will grant Defendants' motion.

## V. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Leave to File Third-Party Complaint. Defendants' Third-Party Complaint (ECF No. 42-1) shall be deemed filed as of the date of this Memorandum Opinion. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 21, 2022                                                                  RUDOLPH CONTRERAS
                                                                                              United States District Judge

---

[6] Mr. Tyson is correct that as the plaintiff, he can choose whom to sue. Pl.'s Opp'n at 18. But that does not mean Defendants cannot choose whom to implead. Contribution "cannot logically depend upon a selection of defendants made by the plaintiff. If it did so depend, the caprice or whim of the plaintiff, or his deliberate intention to fasten liability on one defendant alone, could preclude that defendant from having contribution to which he might otherwise be entitled." *Sperling*, 498 F. Supp. 2d at 291 (quoting *Martello v. Hawley*, 300 F.2d 721, 723 (D.C. Cir. 1962)).